CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

May 24, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JORDAN MITCHELL DERRY,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:22cv00500** |
| | ) | |
| **v.** | ) | **OPINION** |
| | ) | |
| **HAROLD W. CLARKE, Director,** | ) | **By:  Robert S. Ballou** |
| **Respondent.** | ) | **United States District Judge** |

      Jordan Mitchell Derry, a Virginia inmate proceeding *pro se*, has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2022 convictions in Frederick County Circuit Court.  The respondent has filed a Motion to Dismiss, to which the petitioner has responded, making this matter ripe for decision.  Upon consideration of the state court record and transcripts, I will grant the Motion to Dismiss for the reasons stated below.

## I.  BACKGROUND

### A.  Factual Background

      On October 1, 2020, after failing a drug screen test at the probation office, Kevin Shank agreed to work as an undercover confidential informant (CI) for the Northwest Regional Drug Task Force.  That same day, Shank met with members of the Task Force, including Winchester Police Department Sergeant Matthew Bielecki, a member of the Task Force, and advised that he could make a purchase from Jordan Derry.  With Bielecki looking on, Shank sent a text to Derry on Facebook Messenger.  Derry told Shank he would have to "wake Shelby up," but during their texted conversation, they arranged to meet at a Sheetz station 45 minutes to one hour later for Shank to buy $40 worth of heroin.  The Task Force also recorded a telephone conversation between Shank and Derry, before the scheduled meeting, in which Derry said, "Shelby got it."

      Shank rode with another undercover agent, Detective McDonald, to the meet location.  Bielecki and other officers drove separately and parked on the other side of the building.  The

Task Force had wired Shanks with a device to record the transaction and simultaneously transmit the audio to Bielecki and the others.  After performing a pre-transaction search of Shank, they provided him with $40 in Virginia State Police marked funds to make the purchase.

Ten to fifteen minutes after Shank and McDonald arrived, Derry arrived in a car driven by Shelby Cave.  Shank walked over to the car and got in, while McDonald remained in his car. Shank gave the marked money to Derry, saying "there is forty."  Shelby gave Shank a capsule. After the transaction was completed, Derry advised Shank that he and Shelby had used a little of it, so the amount might be a little short, but added that "it is enough to get you rotten; it will get you high."  Shank asked if it was trash, and Derry said "no."

Shank returned to McDonald's car and turned over the capsule as soon as he got in the car.  They proceeded to a pre-arranged location to meet back up with Bielecki for debriefing, while other officers from the Task Force followed Derry and Shelby, stopping the car about two minutes later.  The marked money and other items were in Shelby's possession.  Derry had neither any contraband nor the money.

When Bielecki interviewed Shelby at the police station, she initially denied giving Shank the drugs, but when Bielecki told her the transaction was recorded (falsely suggesting that she was on video, not just audio), she admitted that she had given Shank the capsule, but only because Derry told her to.  She was not prosecuted for the transaction until several months later, but she was arrested on an outstanding warrant at that time.

Police obtained permission to search Derry's home and asked him if they would find anything there.  He indicated that they would only find paraphernalia, which is what they found (a syringe and a spoon).  They arrested Derry, and he was held without bond.  The Task Force officers submitted the capsule to the state laboratory for analysis, and the certificate of analysis indicated that no controlled substances were found.

2

**B. Procedural Background**

Based on the above facts, the grand jury indicted Derry for felony distribution of an imitation controlled substance and conspiracy to distribute an imitation controlled substance, both in violation of Virginia Code § 18.2-248; misdemeanor possession of drug paraphernalia, in violation of Virginia Code § 54.1-3466; and third offense obtaining money by false pretenses and conspiracy to do so, both felonies in violation of Virginia Code 18.2-104.  Derry elected to be tried by jury on the charges.

Originally scheduled for June 23, 2021, after a brief continuance, the trial began July 13, 2021.  Shank (the CI) and Sergeant Bielecki testified on behalf of the Commonwealth, introducing the essential facts discussed above.  Defense counsel moved to strike the evidence of the conspiracy charges and the false pretense charge, arguing that Shelby Cave was the dealer and that the government failed to prove that Derry had any knowledge that the drugs were fake.  The court denied the motion.  The defense introduced no evidence and renewed the motion to strike, which the court again denied.

After the court excused the jury for lunch, the parties began reviewing jury instructions and the court thought that some instructions might need to be changed because a new law, effective July 1—less than two weeks earlier—provided for sentencing by the judge instead of the jury, unless the defendant requested jury sentencing 30 days before trial.  Defendant wanted jury sentencing, and all parties recognized that giving 30 days' notice would not have been possible, as the law went into effect on July 1, 2021.  Because most defendants prefer to be sentenced by the court,  the court conducted an  additional colloquy with Derry to ask questions he would have asked during the pre-plea colloquy, if he had known that defendant was requesting jury sentencing.  Trial Tr. at 148–151.  The discussion included the following:

> THE COURT:  So you understand you are looking at twenty years
> and twelve months?

3

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand the jury can give you twenty years and twelve months?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that the jury does not see what your sentencing guidelines are?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that your sentencing guidelines could be dramatically different than what a jury sentence could be?

THE DEFENDANT:  Yes, sir.  I do.

THE COURT:  Has your attorney gone over your sentencing guidelines with you?

THE DEFENDANT:  Yeah.

THE COURT:  And you understand what your guidelines, discretionary guideline range would have been?

THE DEFENDANT:  No.  No, I don't.

THE COURT:  All right.  Well maybe during lunch you all should do that.
. . . .
Okay? And I will continue the colloquy at that point.

Trial Tr. at 153–154.  After the lunch break, the colloquy resumed:

THE COURT:  . . . . Mr. Bohnaker, have you had time to talk to your client?

MR. BOHNAKER:  Yes, I have, your Honor.

THE COURT:  Does he still want the jury to sentence him?

MR. BOHNAKER:  It is my understanding at this point in time he wants the jury to proceed with sentencing.

THE COURT:  Okay.  Mr. Derry, you were put under oath this morning so you are still under oath.  I am going to ask you a few

4

questions again.  You understand that as of July 1st you have a right to have the Court sentence you if you are found guilty; correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand the maximum penalty for each one of the felonies, if convicted of all four, is five years which counts up to twenty years in the State penitentiary.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand the misdemeanor is up to twelve months in jail if convicted at that point?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you gone over the sentencing guidelines with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  . . . Do you understand what your range would have been under the sentencing guidelines?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand the Court is not required to follow those guidelines though?

THE DEFENDANT:  Yes, sir.

THE COURT:  And but you understand that the jury is not going to see those guidelines?  Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  So you understand that, you know, if the jury sentences you, you know, you know, and, you know, fixes your sentence that that could be the likely sentence you will receive in the case?  Do you understand that?

THE DEFENDANT:  Yes, I do.

*Id.* at 156–158.

5

The jury was instructed and began deliberating.  Following deliberations, the jury returned a verdict of guilty on all charges.  At the sentencing phase, the Commonwealth offered copies of Derry's eighteen prior convictions.  Then, Derry testified on his own behalf, acknowledging his guilt of the charges.  He also testified that he had a long-term substance abuse problem, dating back to 2010 or 2011.  Although he had prior convictions for drug possession, he had never had a distribution charge before.  Noting that he had been locked up for nearly ten months, since October 1, 2020, he told the jury he'd taken a long, hard look at his life and knew he needed to change.  When released from custody, he hoped to move in with his girlfriend who works at a nursing home, to take a job working for his father, and get help at Edge Hill treatment center.  The jury recommended a sentence of four years on the distribution charge, four years on the conspiracy to distribute imitation drugs, two years on the false pretenses, two years on the false pretense conspiracy, and 12 months on the paraphernalia charge, a total of 12 years plus 12 months.

After considering a defense motion to modify the jury recommendation and a pre-sentence report at the sentencing hearing held November 30, 2021, the court sentenced in accord with the jury's verdict, but he ran the two false pretenses charges and the misdemeanor concurrently with the two imitation drug charges.  He ran the two four-year sentences consecutively, leaving Derry with eight years to serve instead of twelve.  The final judgment issued January 6, 2022.  Derry filed a motion for reconsideration on January 29, 2022, beyond the 21-day limit, and the court did not address the motion, no longer having jurisdiction over the case.  Derry did not appeal.

On April 1, 2022, Derry filed a state petition for habeas corpus in the Frederick County Circuit Court, alleging ineffective assistance of counsel in cross-examining the informant and in providing inaccurate guideline calculations (higher than the actual guidelines), causing Derry to

choose jury sentencing.  Counsel for the respondent filed a Motion to Dismiss, and included  trial

counsel's affidavit, notarized on May 9, 2022.  Counsel stated, in part:

> Defense Counsel during his representation of the Defendant, was
> also appointed to two additional charges against him:  Possession
> of Schedule I or II Drugs, and Conspiracy to Distribute Schedule I
> or II Drugs.  During the course of this representation, the
> possibility of a "global agreement" of all charges was discussed.  It
> was at this time that the Sentencing Guidelines came out to be
> around 2 years to 3 and ½ years (an approximation).  It was that
> sentence that was conveyed to the reporter as a "preliminary
> range." When speaking with Mr. Derry prior to having the Jury
> sentence him, I made it clear that his guidelines were in the range
> of 1 year to almost 3 years, as was ultimately calculated.

Habeas R.[1] at 80.  Counsel further noted that Derry did not follow his advice on several issues,

including failure to accept offered plea agreements, wearing his jail clothes to trial instead of

street clothes, and proceeding with jury sentencing.  By order entered July 7, 2022, the court

granted the respondent's motion and dismissed the state habeas petition.

Derry timely filed a notice of appeal on July 17, 2022, but he failed to file a petition for

appeal with the Supreme Court within 90 days, as required by Virginia Supreme Court Rule

5:17(a)(1).  It is now too late for him to perfect the appeal.

On August 29, 2022, Derry filed the current petition before this court, raising the

following issues:

(1) Ineffective assistance of counsel in eliciting harmful, inadmissible testimony from the

CI on cross-examination;

(2) Ineffective assistance of counsel in failing to object to the prosecution's questions on

rebuttal that exacerbated the harmful testimony brought forth during cross;

---

[1] Citations herein to "Habeas R." refer to the Frederick County Circuit Court record in *Derry v. Clarke*, No.: CL22000187-00 (Frederick Co. Cir. Ct.); citations to "Trial R." refer to the Frederick County Circuit Court record in *Commonwealth v. Derry*, No. CR21000534-00 (Frederick Co. Cir. Ct.).  Both refer to the page numbers in the lower right corner of each page.

(3) Ineffective assistance of counsel in miscalculating sentencing guidelines, advising Derry that they were higher than they actually were; and

(4) Prosecutorial misconduct in closing argument, making improper inflammatory comments that were beyond the scope of the evidence.

## II. DISCUSSION

### A. Limitations on Federal Habeas

A federal district court reviewing a § 2254 petition is limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. These procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of sate judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). If a petitioner still has the right to pursue a state remedy by any available procedure, he has not exhausted his claim. 28 U.S.C. 2254(c). Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default.  If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of habeas review.  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court.  *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1990).  A claim that has not been presented to the state's highest court and would be procedurally barred as untimely if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Procedurally defaulted claims can be considered by a federal habeas court only if the petitioner can show both cause for the default and actual prejudice from the claimed violation. *Coleman*, 501 U.S. at 750.  Cause for procedural default requires the existence of some objective factor, external to the defense and not attributable to the prisoner.  *Id.* at 756–57.  To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170–71.

When a prisoner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court applied a special test for "cause and prejudice," different from the *Coleman* test.  *See Martinez v. Ryan*, 566 U.S. 1, 13–15 (2012).  Under  *Martinez*, a petitioner must show (1) that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim; (2) that counsel in the state post-conviction proceeding was ineffective or non-existent; and (3) that the state post-conviction proceeding was the first one in which

petitioner was actually or effectively allowed by state law to raise the claim. *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020).

## B. Analysis

Derry's ineffective assistance of counsel claims fall in the "exhausted and defaulted" category. Although he attempted to appeal the denial of his state habeas petition, he failed to perfect that appeal, so his issues never reached the Supreme Court of Virginia on the merits. Derry can no longer present these issues to the high court because the time in which to do so has expired. His final issue was raised in the trial court in the motion to modify the jury sentence, but he did not file a direct appeal and thus never presented that issue to the Supreme Court of Virginia, thereby procedurally defaulting the claim. I will now examine Derry's issues individually, applying the appropriate standard to determine if he has overcome his procedural default.

### 1. Ineffective Assistance of Counsel Claims

Derry has raised three ineffective assistance of counsel claims, all of which he raised in his state habeas petition. The reason that these claims are procedurally defaulted now is because of his failure to perfect his appeal to the state's highest court. Had Derry been represented by counsel who failed to raise the issue on appeal, this would be ineffective assistance of post-conviction appellate counsel. *See Mahdi v. Stirling*, 20 F.4th 846, 898 (4th Cir. 2021) (finding that "the 'cause' for Mahdi's procedurally defaulted subclaims was PCR appellate counsel's failure to appeal their denial to the Supreme Court of South Carolina."). The Fourth Circuit Court of Appeals then held that the *Martinez* exception only applies to ineffective assistance of counsel at the first level of state habeas proceedings, not to ineffective assistance of appellate habeas counsel. *Id.* at 893, 898. Indeed, the Court in *Martinez* emphasized that "[t]he holding in

this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . ." *Martinez*, 566 U.S. at 16.

An argument can be made that Derry's *pro se* mistake on appeal from the state habeas proceedings does not fall within the *Martinez* exception, either.  In such case, the *Coleman* cause and prejudice test would apply.  Based upon Derry's response to respondent's Motion to Dismiss, Derry appears to believe that filing a notice of appeal was all he had to do to perfect the appeal. Pet. Resp. to Resp's Mot. to Dismiss, ECF No. 14.  The letter from the Circuit Court clerk, which Derry attached as an exhibit to his response, acknowledged receiving his notice of appeal and indicated that the record would be transferred to the Supreme Court of Virginia after certain deadlines passed.  Ltr., ECF No. 14-1 at 3.  The clerk's office cannot give legal advice to litigants, as the clerks act on behalf of the court and must remain neutral.  Derry's ignorance of the law and of his obligation to file a petition for appeal in the Supreme Court of Virginia is not good cause for procedural default, even though he is unrepresented by counsel.  *United States v. Cowley*, 814 F.3d 691, 699 (4th Cir. 2016).  Even if he had been represented by counsel in his state habeas proceeding, negligence of postconviction counsel is not adequate cause for procedural default.  *Coleman*, 501 U.S. at 753; *Maples v. Thomas*, 565 U.S. 266, 280 (4th Cir. 2012).  Because he has not established cause for his procedural default, the court need not consider the issue of prejudice.  *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

Because the outcome is the same either way, however, I will give Derry the benefit of the doubt and apply *Martinez*.  In Virginia, ineffective assistance of counsel claims can only be raised in postconviction proceedings.  *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001). That satisfies one prong of the *Martinez* test.  The test applies not only to ineffective assistance of counsel, but to cases in which the petitioner had no counsel in his state habeas proceeding if ineffectiveness of counsel cannot be raised on direct appeal.  *Martinez*, 566 U.S. at 14.  The

11

policy concern expressed by the Court is that a state that "deliberately chooses to move" ineffective assistance of counsel claims "outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims." *Id.* at 13. Thus, while attorney error in state postconviction proceedings is not normally good cause for procedural default of the issue in federal court, such error *is* good cause for defaulting ineffective assistance of counsel claims. That argument is even stronger when a petitioner, as Derry, has no attorney at all in state post-conviction proceedings.

The remaining prong of *Martinez* is that the ineffective assistance of trial counsel claim must be "substantial." To be substantial, the defaulted claim must have some merit. *Id.* at 14. Just because a claim is substantial enough to get past the procedural bar, however, does not mean that the petitioner will ultimately prevail on the merits. It means only that the court will consider the merits of the otherwise defaulted claim. *Id.* at 17.

In determining whether an ineffective assistance of counsel claim has merit, a federal habeas court must look to the Supreme Court's definition of ineffective assistance of counsel, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To show ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Id.* at 687. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight" but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90. To establish prejudice, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

a. Claim 1

Derry's first ineffective assistance claim is that counsel asked the following question: "[S]he gave you the capsule and you gave Mr. Derry the money I guess because you had done things like this with Mr. Derry in the past.  Isn't that right?"  Trial Tr, at 120.  Shank responded, "Yes."  Derry argues that this question and Shank's answer made him sound like a regular drug dealer and invited otherwise inadmissible evidence of prior bad acts.

I need not address the "deficient performance" prong of ineffective assistance, because this claim has no merit because there is no prejudice to Derry from the question and answer.  As noted by the state habeas court, the uncontradicted evidence of Derry's guilt was overwhelming. The entire transaction was arranged between Derry and Shank.  The parties met at a location that Derry and Shank agreed upon.  Derry was in the car during the transaction, and Shank paid the money to Derry.  This was ample evidence of Derry's guilt as an accomplice, at least, in the sale of the capsule and of his guilt as a co-conspirator with Shelby Cave.  There is no reasonable probability of a different outcome if counsel had not asked this question.  Therefore, this is not a substantial or potentially meritorious issue.

b. Claim 2

Derry next objects to counsel's failure to object to the Commonwealth's re-direct examination of Shank:

> Q.     Sir, you were just asked you had done things like this in the past with Mr. Derry and you said yes.  What does that mean?
>
> A.     We have done other dealings in the past.
>
> Q.     He deals drugs to you?
>
> A.     Yes.

Q.      He has sold you heroin before?

A.      Yes.

Q.      And because he is a drug dealer you normally go to?

A.      Yes.

Trial Tr. at 121.  Derry argues that this entire line of questioning was inadmissible, as it called for evidence of prior bad acts.  This claim is not substantial, because Derry has shown neither deficient performance nor prejudice.

What objections to make are strategic matters for an attorney to make in his sound discretion.  *Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008).  In matters of strategy and tactical decisions, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Experienced attorneys may choose not to object to otherwise improper questions for strategic purposes.  *Deck v. State*, 381 S.W.3d 339, 356 (Mo. 2012).

In the present case, the evidence elicited by the prosecutor on re-direct was not improper.  The rule against evidence of prior bad acts has many exceptions, including that prior bad acts are admissible to establish prior relationships between the parties, to establish guilty knowledge, or to negate a claim of good faith.  *Lafon v. Commonwealth*, 438 S.E.2d 279, 283 (Va. App. 1993).  Further, prior bad act evidence may be admissible in other circumstances to prove any relevant fact (other than simply a character trait of the defendant) as long as the probative value of the evidence outweighs its incidental prejudice.  Va. Sup. Ct. Rule 2:404(b).  At trial, Derry was trying to argue that he was just along for the ride and that Shelby Cave sold Shank the capsule.  Shank's prior relationship with Derry was relevant to dispute that characterization and to thwart any inference that Derry was an innocent bystander.  Counsel's performance is not deficient

14

when he fails to make a futile objection.  *United States v. Mason*, 774 F.3d 824, 833 (4th Cir. 2014).

For the reasons discussed in addressing Claim 1, there was no prejudice to Derry from this line of questioning, even if it had been improper.  Claim 2 is not substantial.

c.  Claim 3

According to Derry, his trial counsel advised him that the sentencing guidelines for his case would be two years at the low end or three and a half years at the high end.  He states that his decision to have the jury sentence him instead of the court was based upon that advice.  The actual guidelines calculated by probation reflected a low end of one year, a mid-point of one year, ten months, and a high end of two years, ten months.  Trial R. at 498.

I need not decide whether counsel's performance was deficient, as *Strickland* requires both deficient performance *and* prejudice.  The trial court's colloquy with Derry ensured that Derry knew he was facing a possible maximum sentence of twenty years plus twelve months.  The trial court advised Derry that the court did not have to follow the guidelines, but the jury would never have the benefit of the guidelines.  Finally, the court advised Derry that it would likely impose whatever sentence the jury recommended, if he chose to have the jury sentence him.  Derry cannot say he was unaware of the risk he was taking.

The trial court emphasized that the four felonies were Class 6 felonies, which carry a term of imprisonment "not less than one year nor more than five years."  Va. Code § 18.2-10(f).  Alternatively, the jury can choose to sentence him to up to 12 months in jail.  Assuming a gracious jury that gave him only one year on each felony, that would still be a four year sentence.  It defies belief that one would consider the chance of a low sentence to be better with a jury than with a judge operating with a high end of three and a half years, especially when counsel had urged him to accept a plea agreement.  *See* Habeas R. at 80.

Moreover, Derry's actions in dealing with his trial attorney showed a pattern of doing what he wanted to do, regardless of his attorney's advice.  He refused to accept plea agreements, chose to wear his jail uniform to trial, and chose to have the jury sentence him, all against his attorney's advice.  This court has no reason to believe that Derry would have listened to his attorney even if the predicted guidelines had been a year lower at the low end and a few months lower at the high end.  For whatever reason, Derry was determined to have the jury sentence him, regardless of his attorney's advice or the court's advisements.  Therefore, he cannot show that he was prejudiced by any error in counsel's guideline calculations.

Claim 3 is also not substantial.  Even under the more lenient *Martinez* standard, he has failed to overcome the default of his ineffective assistance claims.

### 2.  Prosecutorial Misconduct Claim

Derry's prosecutorial misconduct claim challenges the propriety of arguments that the prosecutor made during the sentencing phase of the jury trial.  He particularly objected to argument about facts that were not in evidence, such as drug dealers selling to children and drug dealers selling a product that kills people.  Derry claims that these arguments inflamed the passions and prejudices of the jury.  Pet. Attach. at 34, ECF No. 1-1.  These arguments were raised by counsel in the post-trial motion to modify Derry's jury-recommended sentence.  Trial R. at 380–383.  Derry did not appeal his conviction and sentence, so the argument was not presented to the state's highest court.  Nor did he raise the argument at all in his state habeas petition.  It is too late to raise these issues in any Virginia court now, so the issue is clearly "simultaneously exhausted and defaulted."

Unlike the ineffective assistance of counsel claims, Derry has offered no explanation for his failure to exhaust this issue.  Because he has offered no cause at all, I need not consider the issue of prejudice.  Derry has failed to overcome his procedural default of this issue.

### III. CONCLUSION

Derry procedurally defaulted his claims by failing to present the issues to the highest court of the state for determination on the merits.  Further, he has failed to overcome his procedural default.  I will therefore grant the Respondent's Motion to Dismiss.

I decline to issue a certificate of appealability, because Derry has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Entered:  May 24, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge